1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    TIMOTHY LEE HENRICUS,                    No.  2:20-cv-00677 AC

12              Plaintiff,

13         v.                                  **ORDER**

14    KILOLO KIJAKAZI, Acting
      Commissioner of Social Security,
15
                Defendant.
16

17

18         Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19    ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II

20    of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1]  For the reasons that follow,

21    plaintiff's motion for summary judgment is GRANTED, defendant's cross-motion for summary

22    judgment is DENIED, and the matter will be remanded to the Commissioner for further

23    proceedings.

24                              I.  PROCEDURAL BACKGROUND

25         Plaintiff applied for DIB on November 19, 2010.  Administrative Record ("AR") 12, 178-

26

27    _____

      [1]  DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and
28    who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New
      York, 476 U.S. 467, 470 (1986).

                                               1

79.[2]  Based on that application, an ALJ issued a hearing decision finding that plaintiff was

disabled from November 3, 2010 through July 31, 2012, but was not disabled from August 1,

2012, through the date of the decision, May 21, 2013.  AR 12-21.  Plaintiff appealed the decision,

which was initially affirmed by the district court, but later reversed and remanded by the Ninth

Circuit Court of Appeals.  AR 784-85, 788-97.  While plaintiff's initial claim was on appeal, he

filed a subsequent application for DIB benefits, and the Commissioner determined that plaintiff

was disabled beginning February 10, 2015.  AR 804.  After the Ninth Circuit's decision, the

Appeals Council remanded the first application to the ALJ to adjudicate the period after July 31,

2012.  AR 804.  The Appeals Council noted that the decision on plaintiff's second application

finding him disabled as of February 10, 2015 remained binding, though it could be subject to

reopening depending on the ALJ's re-evaluation of the period after July 31, 2012.  Id.

     ALJ Serena Hong held a hearing on remand on May 24, 2018 at which plaintiff, his

attorney, and a vocational expert were present.  AR 712-48 (transcript).  On October 31, 2018, the

ALJ issued a hearing decision finding plaintiff "not disabled" under Sections 216(i) and 223(d)

of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d) between August 1, 2012 through February 9,

2015.  AR 694-705 (decision), 706-11 (exhibit list).  This is the decision at issue here.  On

January 27, 2020, the Appeals Council denied plaintiff's request for review, leaving the ALJ's

decision as the final decision of the Commissioner of Social Security.  AR 684-88 (decision and

additional exhibit list).

     Plaintiff filed this action on March 31, 2020.  ECF No. 1; see 42 U.S.C. § 405(g).  The

parties consented to the jurisdiction of the magistrate judge.  ECF No. 9.  The parties' cross-

motions for summary judgment, based upon the Administrative Record filed by the

Commissioner, have been fully briefed.  ECF Nos. 16 (plaintiff's summary judgment motion), 17

(Commissioner's summary judgment motion), 18 (plaintiff's reply).

## II.  FACTUAL BACKGROUND

     Plaintiff was born in 1960, and accordingly was, at age 52, a person closely approaching

---

[2]  The AR is electronically filed at ECF Nos. 11-2 (AR 1 to AR 1128).

1    advanced age under the regulations, as of August 1, 2012, the beginning of the period at issue.[3]

2    AR 178, 703.  Plaintiff has at least a high school education and can communicate in English.

3    AR 178, 718.  Plaintiff worked on commercial truck tires from 1982 through November of 2010.

4    AR 32.

5                                        III.  LEGAL STANDARDS

6           The Commissioner's decision that a claimant is not disabled will be upheld "if it is

7    supported by substantial evidence and if the Commissioner applied the correct legal standards."

8    Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the

9    Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews

10   v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

11          Substantial evidence is "more than a mere scintilla," but "may be less than a

12   preponderance."  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such

13   evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v.

14   Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the

15   record can constitute substantial evidence, only those 'reasonably drawn from the record' will

16   suffice."  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

17   Although this court cannot substitute its discretion for that of the Commissioner, the court

18   nonetheless must review the record as a whole, "weighing both the evidence that supports and the

19   evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Secretary of HHS,

20   846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The

21   court must consider both evidence that supports and evidence that detracts from the ALJ's

22   conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

23          "The ALJ is responsible for determining credibility, resolving conflicts in medical

24   testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th

25   Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of

26   which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Thomas v. Barnhart,

27   278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the

28   _____

[3]  See 20 C.F.R. § 404.1563(d) ("person closely approaching advanced age").

                                                     3

1    ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely."  Orn

2    v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.

3    2003) ("It was error for the district court to affirm the ALJ's credibility decision based on

4    evidence that the ALJ did not discuss").

5         The court will not reverse the Commissioner's decision if it is based on harmless error,

6    which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

7    ultimate nondisability determination.'"  Robbins v. Commissioner, 466 F.3d 880, 885 (9th Cir.

8    2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.

9    Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

10                              IV.  RELEVANT LAW

11        Disability Insurance Benefits and Supplemental Security Income are available for every

12   eligible individual who is "disabled."  42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI).  Plaintiff

13   is "disabled" if he is "'unable to engage in substantial gainful activity due to a medically

14   determinable physical or mental impairment . . ..'"  Bowen v. Yuckert, 482 U.S. 137, 140 (1987)

15   (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

16        The Commissioner uses a five-step sequential evaluation process to determine whether an

17   applicant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4);

18   Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation

19   process to determine disability" under Title II and Title XVI).  The following summarizes the

20   sequential evaluation:

21           Step one: Is the claimant engaging in substantial gainful activity?  If
             so, the claimant is not disabled.  If not, proceed to step two.
22

23   20 C.F.R. § 404.1520(a)(4)(i), (b).

24           Step two: Does the claimant have a "severe" impairment?  If so,
             proceed to step three.  If not, the claimant is not disabled.
25
     Id. §§ 404.1520(a)(4)(ii), (c).
26

27           Step three: Does the claimant's impairment or combination of
             impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404,
             Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to
28           step four.

                                       4

1    Id. §§ 404.1520(a)(4)(iii), (d).

2

> Step four: Does the claimant's residual functional capacity make him
> capable of performing his past work?  If so, the claimant is not

3    disabled.  If not, proceed to step five.

4    Id. §§ 404.1520(a)(4)(iv), (e), (f).

5

> Step five: Does the claimant have the residual functional capacity
> perform any other work?  If so, the claimant is not disabled.  If not,

6    the claimant is disabled.

7    Id. §§ 404.1520(a)(4)(v), (g).

8    The claimant bears the burden of proof in the first four steps of the sequential evaluation

9 process.  20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or

10 disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the

11 sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not

12 disabled and can engage in work that exists in significant numbers in the national economy."  Hill

13 v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

V.  THE ALJ's DECISION

15    The ALJ made the following findings:

16

> 1. The claimant meets the insured status requirements of the Social
> Security Act through December 31, 2015.

17

18

> 2. [Step 1] The claimant did not engage in substantial gainful activity
> from  August 1, 2012 through February 9, 2015 (20 CFR 404.1571
> *et seq.*).

19

20

> 3. [Step 2] From August 1, 2012 through February 9, 2015, the
> claimant had the following severe impairments: degenerative disc

21

> disease status post lumbar fusion in July 2011; bilateral carpal tunnel
> syndrome status post release surgery on the left in April 2012 and on
> the right in September 2012; left shoulder impingement and

22

> degenerative joint disease status post decompression surgery in April
> 2012; mild bilateral hip degenerative joint disease; and obesity (20

23    CFR 404.1520(c)).

24

> 4. [Step 3] From August 1, 2012 through February 9, 2015, the
> claimant did not have an impairment or combination of impairments

25

> that met or medically equaled the severity of one of the listed
> impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR

26    404.1520(d), 404.1525 and 404.1526).

27

> 5. [Residual Functional Capacity ("RFC")] After careful
> consideration of the entire record, the undersigned finds that, from

28    August 1, 2012 through February 9, 2015, the claimant had the

5

residual functional capacity to perform light work, as defined in 20 CFR 404.1567(b), except he is further limited to: never climb ladders, ropes, or scaffolds; never crawl; occasionally perform other postural maneuvers such as stooping and couching; never reach overhead with the upper left extremity; occasionally push and/or pull with the bilateral upper extremities; and frequently handle, finger, and feel with the bilateral upper extremities.

6. [Step 4] From August 1, 2012 through February 9, 2015, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. [Step 5] The claimant was born [in 1960] and was 52 years old, which is defined as an individual closing [*sic*] approaching advanced age, on August 1, 2012 (20 CFR 404.1563).

8. [Step 5, continued] The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. [Step 5, continued] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82041 and 20 CFR Part 404, Subpart P, Appendix 2).

10. [Step 5, continued] From August 1, 2012 through February 9, 2015, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the National Economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from August 1, 2016 [*sic*] through February 9, 2015 (20 CFR 404.1520(g)).

AR 697-704.

As noted, the ALJ concluded that plaintiff was "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d).  AR 704.

## VI.  ANALYSIS

Plaintiff alleges that the ALJ erred by (1) failing to give controlling weight to Dr. Hembd's opinions and failing to provide legally sufficient reasons for rejecting those opinions; and (2) failing to satisfy the burden of showing that there existed a significant number of jobs in the economy that plaintiff could have performed during the relevant period.  ECF No. 16-1 at 11-16.  Plaintiff requests that the matter be remanded to the Commissioner for an immediate award of benefits.  Id. at 17.

A.        The Medical Evidence

The ALJ considered the medical opinions of (1) treating pain management provider Dr. Michael Hembd and his physician assistant Sarah Zichella, and (2) orthopedic surgeon Pater A. von Rogov.  AR 700.

a.        The Treatment and Opinions of Dr. Hembd and Ms. Zichella

Dr. Hembd and Physician Assistant Zichella treated plaintiff from April 13, 2012, through July 16, 2013.  AR 556-579, 1123-1128.  On February 25, 2013, Dr. Hembd and Ms. Zichella assessed claimant's work capacities to include limitations for lifting 10 pounds frequently and 20 pounds occasionally; sitting for 6 hours; standing for 3 hours; walking for 3 hours; rest breaks every two hours; and alternate positions after 45 minutes of sitting, 20 minutes of standing, and 20 minutes of walking.  AR 552-555.  On April 25, 2013, Dr. Hembd completed a Work Capacity Evaluation that imposes "permanent" work restrictions.  AR 1127.  Those work restrictions include lifting 20 pounds for 4 hours; sitting 6 hours; standing 3 hours; and walking 3 hours.  Id. The Work Capacity Evaluation does not include the same accommodations for rest periods and alternating positions that Dr. Hembd had previously recommended on February 25, 2013.  AR 1127, 552.

When Dr. Hembd and Ms. Zichella began treating plaintiff on April 13, 2012, plaintiff was feeling much better regarding his low back and legs, but he continued to have pin in the neck and thoracic spine.  AR 569.  Under Dr. Hembd's supervision, Ms. Zichella administered physical therapy for the lumbar, thoracic and cervical spine, with the goal of improving flexibility and tolerance.  AR 571.  Dr. Hembd and Ms. Zichella also consulted with Dr. Neubuerger throughout claimant's treatment.  AR 569, 1125.  While undergoing physical therapy, plaintiff's back pain fluctuated between the levels of 4 to 7 out of 10.  AR 558, 561, 563.  As of July 5, 2012, most of plaintiff's back pain was in the mid to low thoracic area, and Dr. Hembd opined that plaintiff's lumbar spine had "stabilized" and it was recommended that he be transitioned to an independent gym program.  AR 564.  However, on April 16, 2013, plaintiff reported his low back pain increased after gym exercises, and he had some symptoms in the right leg.  AR 1125.  Ms. Zichella and Dr. Hembd attributed the increased pain to plaintiff working out on the treadmill and

7

1    with weights at the gym.  AR 1125.  The physical examination recorded on April 16, 2013,

2    disclosed normal objective findings.  Id.  The last recorded physical examination on July 16,

3    2013, included many normal findings, except that lumbar range of motion was limited and

4    painful, and flexion at 50 degrees and extension at 10 degrees aggravated pain in the lower back.

5    AR 1123.

6         The ALJ gave partial weight to Dr. Hembd's opinions overall, crediting portions and

7    discrediting others.  For instance, the ALJ found that Dr. Hembd and Ms. Zichella's completed

8    disability reports dated September 2012, November 2012, and July 2013, "which indicate the

9    claimant retains the capacity to lift up to 20 pounds and push and pull up to 25 pounds[,]"

10   deserved "great weight to the extent they are consistent with the record as a whole."  AR 700-01.

11   The ALJ found that an April 2013 opinion, which said that plaintiff could participate in "regular"

12   but not "more strenuous" activities was entitled to partial weight because it was vague and did not

13   provide a function-by-function assessment or define the terms "regular" or "strenuous."  AR 701.

14        The ALJ further concluded that the April 2013 opinion, "which indicates that the claimant

15   is capable of: lifting, pushing, and pulling between 20 and 25 pounds; sitting for 10 hours;

16   walking for 3 hours and standing for 3 hours; occasionally bending/stooping, squatting, kneeling;

17   rarely twisting and climbing; and operating a motor vehicle to and from work[,]" was entitled to

18   only partial weight.  The ALJ reasoned:

19            [the] limitations contained in this questionnaire are not well
              explained, but they are generally consistent with Dr. Hembd and
20            assistant Ms. Zichella's prior opinions, which restrict the claimant to
              lifting, pushing, and pulling no more than 20 to 25 pounds during the
21            alleged period of disability currently at issue . . .[though] the extreme
              limitations contained in this questionnaire for standing and walking
22            are not supported by Dr. Hembd and assistant Ms. Zichella's
              treatment records, which document intact heel and toe walking, intact
23            strength in the lower extremities, and negative straight leg raise
              testing in April 2013 and July 2013.
24

25   AR 701.

26        Finally, the ALJ partially discounted the July 2013 report "which indicates the claimant is

27   limited to: lift, carry, push and pull up to 20 pounds; sit for 6 hours in an 8-hour workday; stand

28   for 3 hours in an 8-hour workday; walk for 3 hours in an 8-hour workday; occasionally balance,

8

1   kneel, and stoop/bend; never climb, crouch, or crawl; and frequently use foot controls" because it

2   was "not well explained" and contained limitations inconsistent with those recommended in April

3   2013.  AR 701-02.  The ALJ further concluded that the opinion was not supported by findings

4   contained in the treatment reports or diagnostic test reports.  AR 702.

5             b.   The Treatment and Opinion of Dr. von Rogov

6          Dr. Peter von Rogov began treating plaintiff on March 23, 2011.  AR 525-550.  His last

7   report on plaintiff's condition is dated July 15, 2013.  Id.  Dr. von Rogov assessed the following

8   work restrictions: (1) no repetitive bending or stooping; (2) no frequent lifting over 25 lbs. from

9   floor to shoulder; (3) no occasional lifting over 30 lbs. from waist to shoulder; (4) no occasional

10  lifting over 35 lbs from floor to shoulder, (5) no repetitive lifting over shoulder level; and (6) no

11  lifting over 15 lbs, requiring twisting of the trunk.  AR 1110-1111.

12         Dr. von Rogov's treatment was primarily limited to plaintiff's shoulder and wrist/hand

13  injuries.  AR 525-550, 581-683, 1076-1122.  He performed left shoulder surgery and carpal

14  tunnel release surgeries on the right and left wrists.  AR 608, 609, 618.  Dr. von Rogov did not

15  treat plaintiff's lumbar or thoracic impairments though he did occasionally provide examination

16  on those areas.  For example, on April 24, 2011, Dr. von Rogov noted intact sensation and no

17  motor weakness about both lower extremities.  AR 534.  The doctor noted on March 7, 2012 that

18  plaintiff had "excellent progress" since his L5-S1 fusion surgery.  AR 653.  At that same

19  examination, plaintiff expressed interest in arthroscopic surgery to the left shoulder and both

20  wrists.  Id.

21         The ALJ noted that Dr. von Rogov "completed a report in July 2013, which indicates the

22  claimant is limited to: lifting, from floor to shoulder, up to 25 pounds frequently and 35 pounds

23  occasionally; lifting, from waist to shoulder, up to 30 pounds occasionally; lifting that requires

24  twisting of the truck up to 15 pounds; and no repetitive bending, stooping, or lifting over shoulder

25  level.  AR 702.  The ALJ noted the opinion was generally supported by the doctor's own records

26  but that "evidence introduced at the hearing level support a greater degree of exertional

27  limitation" and the opinion was thus given partial weight.  Id.  The ALJ discounted a report from

28  September 2012, which stated the claimant was "temporarily totally disabled" from his regular

1    occupation because the opinion was not well explained and opined on the ultimate issue of

2    disability, which is a determination reserved to the Commissioner.  Id.

3        B.  Principles Governing the ALJ's Consideration of Medical Opinion Evidence

4        The weight given to medical opinions depends in part on whether they are proffered by

5    treating, examining, or non-examining professionals.[4]  Lester v. Chater, 81 F.3d 821, 834 (9th

6    Cir. 1995), as amended (Apr. 9, 1996).

> Those physicians with the most significant clinical relationship with
> the claimant are generally entitled to more weight than those
> physicians with lesser relationships. As such, the ALJ may only
> reject a treating or examining physician's uncontradicted medical
> opinion based on clear and convincing reasons. Where such an
> opinion is contradicted, however, it may be rejected for specific and
> legitimate reasons that are supported by substantial evidence in the
> record.

12   Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (internal citations

13   omitted).  "The general rule is that conflicts in the evidence are to be resolved by the Secretary

14   and that his determination must be upheld when the evidence is susceptible to one or more

15   rational interpretations."  Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

16       However, when the ALJ resolves conflicts by rejecting the opinion of an examining

17   physician in favor of the conflicting opinion of another physician (including another examining

18   physician), he must give "specific and legitimate reasons" for doing so.  Regennitter v. Comm'r of

19   Soc. Sec. Admin., 166 F.3d 1294, 1298–99 (9th Cir. 1999) ("Even if contradicted by another

20   doctor, the opinion of an examining doctor can be rejected only for specific and legitimate

21   reasons that are supported by substantial evidence in the record.").

22       C.  The ALJ Erred in Partially Rejecting Dr. Hembd's Opinions

23       The ALJ credited portions of Dr. Hembd's opinions but rejected the opinions limiting

24   plaintiff's walking and standing abilities and his need to alternate positions by asserting that those

25   limitations are "extreme," not well explained, and are inconsistent with or not supported by Dr.

26

---

27   [4] There have been recent updates to the rules on medical sources; this section of the code applies
     to claims filed before March 27, 2017. See 20 C.F.R. § 404.1527.  Plaintiff's claims were filed
28   prior to 2017 and are therefore not impacted by the changes.

1    Hembd's and Ms. Zichella's other clinical findings (intact heel and toe walking, intact strength in

2    the lower extremities, and negative straight leg raise).  AR 701, 702.  The ALJ also rejected the

3    postural limitations assessed in February 2013 because ethe opinion was "not well explained" and

4    inconsistent with limitations assessed in April 2013.  AR 701.  "A treating physician's opinion on

5    disability, even if controverted, can be rejected only with specific and legitimate reasons

6    supported by substantial evidence in the record."  Reddick, 157 F.3d at 725.

7         Here, the undersigned finds that the ALJ's rejection of Dr. Hembd's standing and walking

8    limitations is not supported by specific and legitimate reasons because the ALJ failed to explain

9    how documented intact heel and toe walking, intact strength in the lower extremities, and

10   negative straight leg raise testing in April 2013 and July 2013 contradict the assessed limitations.

11   AR 701.  Plaintiff argues that these clinical findings do not actually contradict the assessed

12   limitations, and "the ALJ failed to set forth her interpretations concerning the significance of

13   plaintiff's intact heel and toe walking, intact strength in the lower extremities, and negative

14   straight leg raise testing, or the significance of any other findings contained in the treatment

15   reports and diagnostic test reports."  AR 18 at 4.  The Commissioner does not directly address

16   whether or not the referenced clinical findings medically contradict the assessed limitations.  In

17   any case, the court agrees that it was error for the ALJ to draw the conclusion that Dr. Hembd's

18   medical findings and assessed limitations were inconsistent with one another without explanation.

19   The ALJ erred in rejecting these limitations without providing proper support for doing so.

20        Although plaintiff also argues error at Step Five, the undersigned finds that argument

21   entirely derivative of the argument that Dr. Hembd's limitations were improperly rejected.

22   Plaintiff's step five argument also requires recrediting Dr. Hembd's assessed limitations.

23   Because, as discussed below, the court finds that remand for further evaluation is the appropriate

24   remedy in this case, rather than remand for an immediate award of benefits, the Step Five

25   argument need not and cannot be addressed at this time.

26     D.  The ALJ's Error Necessitates Remand for Further Consideration

27        As discussed, the ALJ erred in partially rejecting limitations assessed by Dr. Hembd and

28   his physician assistant.  An error is harmful when it has some consequence on the ultimate non-

1  disability determination.  Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir.

2  2006).  The ALJ's error in this matter was harmful; properly considering all the limitations

3  assessed by Dr. Hembd may very well result in a more restrictive residual functional capacity

4  assessment, which may in turn alter the finding of non-disability.  Though plaintiff seeks remand

5  for an immediate award of benefits, the court finds remand for further consideration to be the

6  appropriate remedy because the ALJ's treatment of Dr. Hembd's limitations was deficient, but the

7  extent to which they should be credited is for the ALJ to determine in the first instance.  Treichler

8  v. Comm'r of Soc. Sec., 775 F.3d 1090, 1099 (9th Cir. 2014) ("the proper course, except in rare

9  circumstances, is to remand to the agency for additional investigation or explanation").  The

10  undersigned finds that in this case, additional administrative review would be useful.

VII.  CONCLUSION

12      For the reasons set forth above, IT IS HEREBY ORDERED that:

13      1.  Plaintiff's motion for summary judgment (ECF No. 16), is GRANTED;

14      2.  The Commissioner's cross-motion for summary judgment (ECF No. 17), is DENIED;

15      3.  This matter is REMANDED to the Commissioner for further consideration consistent

16  with this order; and

17      4.  The Clerk of the Court shall enter judgment for plaintiff and close this case.

18  DATED: February 9, 2022

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

12